STEVEN T. GUBNER – Bar No. 156593
JASON B. KOMORSKY - Bar No. 155677
JESSICA L. BAGDANOV - Bar No. 281020
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:      sgubner@bg.law
            jkomorsky@bg.law
            jbagdanov@bg.law

Special Litigation Counsel for
Thomas H. Casey, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ICE ENERGY HOLDINGS, INC.,<br><br>          Debtor. | Case No. 8:19-bk-14865-MW<br><br>Chapter 7<br><br>Adv. No. |
| THOMAS H. CASEY, Chapter 7 Trustee,<br><br>          Plaintiff,<br><br>v.<br><br>DAVID ZEZZA, an individual; MARCEL CHRISTIANS, an individual; ALEX COLLINS, an individual; JOSEPH DRAPER, an individual; DAVID HEATLEY, an individual; DANIEL LEFF, an individual; FRANCIS CARROLL, an individual; MARCUS CHILDRESS, an individual; JAMES KELLY, an individual; MINAKAMI LLC, a Delaware limited liability company; MINAKAMI TRUST; VOYAGER OCEAN LIMITED, a foreign entity of unknown form; and DOES 1 to 100, inclusive,<br><br>          Defendants. | **COMPLAINT FOR:**<br><br>**(1) BREACH OF FIDUCIARY DUTY;**<br><br>**(2) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br><br>**(3) DECLARATORY RELIEF;**<br><br>**(4) EQUITABLE SUBORDINATION;**<br><br>**(5) OBJECTION TO CLAIMS;**<br><br>**(6) LIEN AVOIDANCE;**<br><br>**(7) AVOIDANCE OF PREFERENTIAL TRANSFERS;**<br><br>**(8) PRESERVATION OF AVOIDED TRANSFERS.** |

COMPLAINT

2381302

Thomas H. Casey, solely in his capacity as Trustee (the "Trustee") for the bankruptcy estate of Debtor Ice Energy Holdings, Inc. ("Debtor" or "Ice Energy"), complaining of Defendants, hereby alleges as follows:

## NATURE OF ACTION AND JURISDICTION

1.      In accordance with Local Bankruptcy Rule 7008-1, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 151, 157(b)(1) and (2), and 1334(a), as well as General Order No. 13-05 of the District Court for the Central District of California, on the basis that this action is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (K), and (O), and arises in or under the chapter 7 bankruptcy case of *In re Ice Energy Holdings Inc.*, 8:19-bk-14865-MW, currently pending before this Court.  The Trustee consents to entry of final orders or judgment by this Court.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

3.      By this action, the Trustee seeks damages from certain former directors and officers of the Debtor for breach of their fiduciary duty of care and loyalty in their prepetition management of the Debtor, damages from certain defendants for aiding and abetting those breaches of fiduciary duty, and recharacterization of purported loans provided by certain Defendants at the eleventh hour of the Debtor's operations, which were in reality equity infusions designed to benefit the Defendants, not the Debtor.  Defendants' misconduct directly precipitated Ice Energy's declaration of bankruptcy, while the improperly classified loans were designed to provide Defendants with an unfair advantage.  In addition, the Trustee objects to the proofs of claim filed by the Defendants in the Debtor's bankruptcy case and seeks disallowance of such claims, or alternatively equitable subordination of those claims, as well as avoidance of preferential transfers to certain Defendants.

4.      As explained in further detail below, the former officers and directors of Ice Energy deliberately—or at best, recklessly—mismanaged Ice Energy's affairs, including its valuable business relationship with Ice Bear, SPV #1, LLC ("Ice Bear SPV") and, Ice Bear SPV's parent company, ACP Thule Investments, LLC ("ACP") (Ice Bear SPV and ACP, collectively, "Ice Bear"), choosing to elevate their own personal interests above those of Ice Energy and its creditors (including Ice Bear). Among other things, the Trustee's investigation into the Debtor's prepetition

2381302

1 affairs has revealed that the Defendants: (i) failed to take advantage, without justification, of offered

2 funding that would have prevented the bankruptcy filing and preserved assets of the Debtor's estate;

3 (ii) caused Debtor funds to be misappropriated, such as obtaining funds to pay vendors but failing to

4 make payments to such vendors; (iii) misrepresented the liabilities and financial state of Ice Energy

5 to its board of directors; (iv) failed to maintain appropriate insurance coverage needed to protect Ice

6 Energy's assets; (v) misrepresented the assets owned by the Debtor; (vi) failed to implement proper

7 internal controls and procedures to avoid those and other misappropriations, defaults, violations, and

8 misrepresentations; (vii) failed in general to exercise due care in overseeing the Debtor's business

9 and managing risks, ultimately causing the bankruptcy filing; (viii) pursued self-interested

10 transactions and elevated the director and officers' own personal interests above those of Ice Energy

11 and its other stakeholders, including through the making and facilitating of insider disguised equity

12 contributions; and (ix) caused Ice Energy to schedule questionable claims in the Bankruptcy Case,

13 including alleged unsecured claims by Collins, Zezza, and others.  The Debtor now faces tens of

14 millions of dollars in liabilities, including over $20 million owed to Ice Bear alone.

15     5.     Further, the former officers and directors of Ice Energy caused last-minute transfers

16 of over $1 million made by certain current or former officers or directors of Ice Energy (or their

17 affiliates) to Ice Energy in an effort to unfairly grant themselves priority secured status, which

18 caused significant damage to Ice Energy and its creditors.   Claims for this conduct include

19 recharacterization of the insider "loans" as equity and equitable subordination of the purported

20 secured claims. The investors filed all-asset financing statements attempting to perfect their alleged

21 security interests just one day before the petition date (thus avoidable as a preference if the loans

22 were truly loans). These eleventh-hour transfers, designed to unfairly afford equity holders priority

23 status rather than reflecting legitimate loans, should be recharacterized as equity, and such claims

24 should be disallowed in their entirety.

25                               **PARTIES**

26     6.     The Trustee brings this action solely in his capacity as chapter 7 trustee for the

27 Debtor's estate.

28

2
COMPLAINT

2381302

7.      Plaintiff is informed and believes, and based thereon alleges that Defendant David Zezza ("Zezza") was the former treasurer and director of the Debtor, and is the second largest equity holder of the Debtor.  Zezza was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

8.      Plaintiff is informed and believes, and based thereon alleges that Defendant Marcel Christians ("Christians") was the former Chief Operating Officer and Chief Technology Officer of the Debtor.  Christians was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

9.      Plaintiff is informed and believes, and based thereon alleges that Defendant Alex Collins ("Collins") was the former President and Chief Financial Officer of the Debtor.  Collins was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court. (Zezza, Christians, and Collins are referred to herein collectively as the "Officers.")

10.      Plaintiff is informed and believes, and based thereon alleges that Defendant Joseph Draper ("Draper") was the former Executive Chairman of the Debtor's board of directors.   Draper was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

11.      Plaintiff is informed and believes, and based thereon alleges that Defendant Daniel Leff ("Leff") was a former Chairman and member of the Debtor's board of directors.  Leff was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

12.      Plaintiff is informed and believes, and based thereon alleges that Defendant Francis Carroll ("Carroll") was a former member of the Debtor's board of directors.  Carroll was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

13.      Plaintiff is informed and believes, and based thereon alleges that Defendant Marcus Childress ("Childress") was a former member of the Debtor's board of directors and served as the Debtor's CRO.  Childress was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

14.      Plaintiff is informed and believes, and based thereon alleges that Defendant James Kelly ("Kelly") was a former member of the Debtor's board of directors.  Kelly was at all times

2381302

relevant a resident of and/or conducted business within the jurisdiction of this Court.  (Draper, Leff, Carroll, Childress, and Kelly are referred to herein collectively as the "Directors.")

15.     Plaintiff is informed and believes, and based thereon alleges that Defendant David Heatley ("Heatley") was a is an equity holder of the Debtor (through warrants and an investment in the Ice Energy Co-investment Fund).  Heatley was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

16.     Plaintiff is informed and believes; and based thereon alleges that Defendant Diane Stewart ("Stewart") served in a capacity as legal counsel to the Debtor; attended board meetings, including on at least one occasion in the capacity of acting Secretary; is an equity holder of the Debtor (through the Diane Stewart Dynasty Trust); is the spouse of Defendant Zezza; and is an insider of the Debtor.  Stewart was at all times relevant a resident of and/or conducted business within the jurisdiction of this Court.

17.     Plaintiff is informed and believes, and based thereon alleges that Defendant Minakami, LLC is a Delaware limited liability company and is an insider of the Debtor.

18.     Plaintiff is informed and believes, and based thereon alleges that Defendant Minakami Trust is a trust and that Minakami, LLC is its trustee.  (Minakami Trust and Minakami, LLC are referred to collectively herein as "Minakami.")

19.     Plaintiff is informed and believes, and based thereon alleges that Defendant Voyager Ocean Limited ("Voyager") is a foreign entity of unknown nature, and is an insider of the Debtor.

20.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## FACTUAL BACKGROUND AND ALLEGATIONS

### A. Prepetition Management of the Debtor

21.     Prior to its bankruptcy filing, Ice Energy operated as an energy storage company serving utility companies in California, manufacturing, installing, and maintaining specialized thermal energy storage units ("Ice Bear Units").  Ice Energy created the Ice Bear System, which was

1    designed to freeze water at night to take advantage of lower electricity rates, and then use the ice for

2    space cooling during the day.

3        22.    Ice Energy managed various programs pursuant to which it provided Ice Bear Units

4    to customers, including Southern California Edison ("SCE," and such program the "SCE Program").

5    In connection with the SCE Program, Ice Energy entered into a Master Goods and Services

6    Agreement with Ice Bear, pursuant to which Ice Energy agreed to manufacture, install, and deliver

7    all goods and services that Ice Bear required to perform under various energy service agreements

8    between it and SCE; including, but not limited to, customer acquisition, manufacturing, and

9    installation of the Ice Bear Units, and post-installation inspections, maintenance, and repairs.

10        23.    At all times relevant, each of the Directors and/or Officers of the Debtor owed

11    fiduciary duties of care and loyalty to the Debtor and owed a duty not to engage in self-dealing

12    conduct that could harm the Debtor.

13        24.    Various acts and omissions by the Directors and/or Officers give rise to claims for

14    breach of fiduciary duties, including:

15        a.    Failing to take advantage, without justification, of available funding that

16            would have prevented the bankruptcy filing and preserved assets of the Estate.

17        b.    Causing funds to be misappropriated.

18        c.    Misrepresenting the liabilities and financial state of the company to the Board

19            of Director.

20        d.    Reckless breaches of confidentiality agreements with ACP, exposing the

21            Debtor to claims for damages. This included Collins' sharing of a version of a

22            confidential term sheet with Nations Interbanc.

23        e.    Apparent failure to maintain appropriate insurance coverage needed to protect

24            the company's assets, including as specifically required in the Debtor's

25            agreements with ACP.

26        f.    Misrepresentation of assets owned on the statements and schedules Form 206

27            filing, including the asserted ownership of certain critical manufacturing

28

2381302

1    molds that were subsequently confirmed to not actually be owned by the

2    Debtor.

3    g.    Failure to implement proper internal controls and procedures to avoid those

4        and other misappropriations, defaults, violations, and misrepresentations.

5    h.    Overall failure to exercise due care in overseeing the business and managing

6        risks, ultimately causing the bankruptcy filing.

7    i.    Pursuing self-interested transactions and elevating their own personal interests

8        above those of the Debtor and its other stakeholders, including through the

9        making and facilitating of the insider disguised equity contributions discussed

10       further below, and through plans to otherwise improperly favor equity.  On

11       information and belief, this specifically included, but was not limited to

12       Collins (with others) devising a scheme to acquire the Debtor's assets for their

13       own benefit, at the expense of the Debtor and its creditors. After mismanaging

14       the Debtor's business and damaging its valuable relationship with ACP,

15       Collins (with others) then sought to acquire the Debtor's assets for themselves

16       at a significant discount. Collins (and others) have admitted to key details of

17       this scheme, distributing what is styled as an "Information Memorandum" that

18       acknowledged the bankruptcy filing was a "direct result" of their desire to

19       shed ACP's contract and opining that "the client pipeline could be targeted

20       once the Company exits bankruptcy proceedings."

21   j.    Causing the Debtor to schedule questionable claims, including alleged

22       unsecured claims by Collins.

23   k.    Circumventing the Trustee and engaging in their own efforts to market the

24       Debtor's assets, including violating the automatic stay by appropriating the

25       Debtor's intellectual property.

26   l.    Attempting to organize a bid that could only result in a failed attempt at a sale

27       in violation of section 363 of the Bankruptcy Code, 11 U.S.C. § 101 et seq.,

28       because it would not be a good-faith, arms' length transaction, but rather an

2381302

improper attempt by insiders to imperil the Debtor's business for certain

former officers and directors' own personal gain.

25.    These acts caused the Debtor substantial damages, ultimately leading to its

bankruptcy filing and compromising the bankruptcy process.

**B.    UCC-1 Financing Statements Recorded Immediately Prepetition**

26.    On December 16, 2019, one day before the Debtor filed for bankruptcy, the following

UCC-1 Financing Statements were recorded against the Debtor with the California Secretary of State

(collectively, the "Insider UCC-1s"):

| Alleged Secured Party | Filing No. | Collateral |
| --- | --- | --- |
| David Heatley | 19-7752285400 | All assets of the Debtor |
| Joseph Draper | 19-7752285268 | All assets of the Debtor |
| David Zezza | 19-7752285884 | All assets of the Debtor |
| Minakami Trust, on information and belief related to Defendant Minakami LLC's loan | 19-7752285521 | All assets of the Debtor |
| Voyager Ocean Limited | 19-7752285763 | All assets of the Debtor |

27.    On information and belief, each of the Insider UCC-1s were filed by or on behalf of

an insider of the Debtor.

**C.    The Debtor's Bankruptcy Case and Defendants' Proofs of Claim**

28.    On December 17, 2019, the Debtor commenced this bankruptcy case by the filing of a

voluntary petition under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

The Debtor's Petition and schedules were signed by Defendant Collins on behalf of the Debtor.

29.    Thomas H. Casey was thereafter duly appointed as chapter 7 trustee, in which

capacity he continues to serve.

30.    On July 10, 2020, Defendant Collins filed Proof of Claim No. 62 in the Debtor's

bankruptcy case, asserting a general unsecured claim in the amount of "at least" $53,217.81.

31.    On July 10, 2020, Defendant Heatley filed Proof of Claim No. 63 in the Debtor's

bankruptcy case, asserting a claim of $492,153.12, allegedly comprised of a secured claim in the

amount of $250,000 and an unsecured claim for the balance of $242,153.12.

2381302

32.     On July 10, 2020, Defendant Zezza filed Proof of Claim No. 64 in the Debtor's bankruptcy case, asserting a claim of "at least" $2,569,171.87, allegedly comprised of a secured claim in the amount of $375,000 and an unsecured claim for the balance of approximately $2,194,171.87.

33.     On July 10, 2020, Defendant Carroll filed Proof of Claim No. 65 in the Debtor's bankruptcy case, asserting a general unsecured claim in the amount of "at least" $3,101,533.78.

34.     On July 10, 2020, Defendant Draper filed Proof of Claim No. 66 in the Debtor's bankruptcy case, asserting a claim of $9,250,381.00, allegedly comprised of a secured claim in the amount of $140,000 and an unsecured claim for the balance of $9,110,381.

35.     On July 10, 2020, Defendant Minakami LLC filed Proof of Claim No. 68 in the Debtor's bankruptcy case, asserting a claim of "at least" $300,000.  Minakami LLC alleges that the claim is secured in the total amount of $300,000.

36.     On July 10, 2020, Defendant Voyager Ocean Limited filed Proof of Claim No. 73 in the Debtor's bankruptcy case, asserting a general unsecured claim in the amount of "at least" $520,958.90.

37.     Furthermore, the Debtor's schedules reflect the following transfers to Defendants within the one-year period preceding the Debtor's bankruptcy filing (collectively, the "Insider Transfers"):

| Transfer Recipient | Date | Amount |
| --- | --- | --- |
| Joseph Draper | 12/2018-7/2019 | $220,042.90 |
| James Kelly | 12/2018-6/2019 | $83,667 |
| Francis Carroll | 12/2018-7/2019 | $120,936.37 |
| David Zezza | 12/2018-4/2019 | $56,735.36 |

38.     On information and belief, Draper, Kelly, Carroll, and Zezza qualify as "insiders" of the Debtor as that term is used in Bankruptcy Code section 101.

39.     On information and belief, each of the transfers reflected in paragraph 37, supra, were made by the Debtor on account of an antecedent debt.

2381302

**D.  The Breaches of Fiduciary Duty by the Officers and Directors**

40.    As Officers of the Debtor, Zezza, Christians, and Collins owed fiduciary duties to the Debtor, including the duty of loyalty and care.

41.    Among other things, on information and belief the Officers failed to take advantage of a $1,000,000 loan offered in December 2019 because the Officers wanted to accommodate old equity holders.  This would have provided the Debtor with bridge financing to continue operations while longer term equity was sourced.

42.    The books and records reflect that ACP provided monies specifically to pay vendors, but those monies were misappropriated and the vendors not paid.  As but two examples, on information and belief, ACP provided monies to the Debtor to pay Royal Wholesale Electric and Trevi Communications, but both of those vendors claim never to have been paid.

43.    On information and belief, the Officers misled the Board of Directors with respect to the liabilities and financial state of Ice Energy.  For example, the September 17, 2019 Board Update contained a slide, which misrepresented and understated the cost of the SCE Program as being $13.2 million (with $6.7 million of funding required by existing or new investors) when the actual cost was between $20 to $30 million and the potential liability to investors to complete the program were between $10 million and $20 million.

44.    On information and belief, Collins provided a version of a confidential term sheet to Nations Interbanc, which was a breach of a confidentiality agreement with ACP.

45.    The Officers failed to implement proper controls and procedures to avoid the above misrepresentations, defaults and violations and failed to exercise due care in overseeing the business and managing risks, which failures led to the Debtor's bankruptcy filing.

46.    On information and belief, the Officers pursued self-interested transactions, thus elevating their own interests above those of the Debtor.  Those self-interested transactions included at least the following:

       a.    Making and facilitating disguised equity contributions as loans.  Several investors purported to make "loans" to the Debtor at the eleventh hour and then purported to perfect their security interests the day before the bankruptcy

filing.  These last minute transfers were designed to afford equity holders priority status rather than reflecting legitimate loans, unfairly creating approximately $1,000,000 in purportedly secured claims.

b.  Hatching a scheme to acquire the Debtor's assets for their own benefit, at the expense of the Debtor and its creditors.  In this regard, the Officers created an "Information Memorandum" wherein the Officers acknowledge that the bankruptcy filing was a "direct result of their desire to shed ACP's contract, and that "the client pipeline could be targeted once the Company exits bankruptcy proceedings."  As the Officers stated, "What former Ice Executives are doing is to form a NewCo asap," and "[i]f NewCo is the winner [of the chapter 7 sale process], then NewCo commences operations as a going concern."

c.  Allowing for the scheduling of questionable claims, including their own and by various other insiders.  Some of these claims appear to be disguised equity contributions subject to recharacterization and subordination, and

d.  Circumventing the Trustee and attempting to engage in their own efforts to market the Debtor's assets, despite the fact that they had no power to do so and their efforts violated the automatic stay.

47.      In turn, the Directors had a fiduciary duty of care and loyalty to ensure that the Officers were conducting Ice Energy's business in conformity with proper corporate governance and formalities (which they were not as identified above) and to ensure against self-dealing transactions, such as the last minute "loans" by insiders, which were in fact equity.

## FIRST CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (Against the Officers and Directors)

48.      Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

49.     Pursuant to their positions, the Officers owed Ice Energy fiduciary duties.  Among these duties was a duty of care to act with minimal competency to ensure that Ice Energy was a properly run entity under the law and a duty of loyalty to avoid placing their own interest ahead of those of the Debtor and its creditors.  In this regard, the Defendants had a duty, among other things:

a.     To conduct due diligence for important hires and contracts;

b.     To ensure that Ice Energy had a well-functioning and full set of corporate officers at all times, including a Chief Executive Officer;

c.     To ensure that its Officers were not exceeding their authority;

d.     To provide due consideration and deliberation of material actions taken on behalf of Ice Energy to ensure the Directors were exercising their best business judgment (or any business judgment); and

e.     To avoid self-dealing and taking actions for their benefit or the benefits of others to the detriment of the Debtor.

50.     Despite the duty of care and loyalty that the Officers owed the corporation, the Officers breached these duties, as outlined *supra*.

51.     These failures were of such a basic nature that they are not excused by any legal doctrine, including but not limited to the business judgment rule.  The breaches of loyalty are also obvious by, among other things, the disguised equity infusions and other acts of self-dealing discussed above.

52.     In turn, the Directors had a fiduciary duty of care and loyalty to oversee the Debtor and ensure that the Debtor was following corporate formalities and practicing good corporate governance and, further, to ensure against the acts of the Officers and certain Directors described herein.

53.     As a direct and proximate result of the Officers' and Directors' breaches of the fiduciary duty of care and loyalty, Ice Energy found itself on increasingly precarious financial footing.  These breaches of the fiduciary duty of care and loyalty were the underlying, direct, and proximate cause of damage caused to the Debtor's estate, in an amount according to proof at trial.

2381302

## SECOND CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty

### (Against Draper, Carroll, Kelly, Zezza, Christians, Collins, and Stewart)

54.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

55.    Additionally and alternatively, Defendants Draper, Carroll, Kelly, Zezza, Christians, Collins, and Stewart, as Officers, Directors, and insiders of the Debtor, aided and abetted the breaches of fiduciary duty committed by Defendants Leff and Childress, as identified above.

56.    On information and belief, Defendants Draper, Carroll, Kelly, Zezza, Christians, Collins, and Stewart knowingly participated and substantially assisted in the breaches of fiduciary duty committed by Leff and Childress, including the causing of the Debtors' failure to take advantage, without justification, of offered funding that would have prevented the bankruptcy filing and preserved assets of the Debtor's estate.

57.    Defendants' concerted actions were the underlying, direct, and proximate cause of damage caused to the Debtor's estate, in an amount according to proof at trial.

## THIRD CLAIM FOR RELIEF

### Declaratory Relief

### (Against Heatley, Draper, Zezza, Minakami, and Voyager)

58.    Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

59.    A dispute now exists regarding the purported loans made to the Debtor on the eve of the bankruptcy.

60.    On information and belief, these were in fact equity infusions by equity holders disguised as loans.

61.    Among other things, the Debtor discussed seeking an equity infusion from its equity holders and insiders, not seeking a loan.

2381302

62.     Additionally, the Debtor was offered a loan from the Lender, and there is no evidence that the Defendants conducted any due diligence to determine whether the loan offered by the Lender was more or less favorable than the terms provided by the insiders.

63.     Additionally, the loans were made on the eve of bankruptcy, which rendered them per se preferences.

64.     Finally, any dates for repayments, interest rates, or maturity dates were necessarily illusory given that the Debtor knew that it was in the process of filing for bankruptcy protection.

65.     Plaintiff seeks a declaration that the "loans" in 2019 were in fact equity infusions, which should be re-characterized as such.

## FOURTH CLAIM FOR RELIEF

### Equitable Subordination

### (Against Defendants Collins, Zezza, Heatley, Carroll, Draper, Minakami and Voyager)

### [11 U.S.C. § 510(c)(1)]

66.     Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

67.     In the event that claims 62, 63, 64, 65, 66, 68 and/or 73 (the "Claims"), by which Collins, Zezza, Heatley, Carroll, and Draper, Minakami and Voyager, respectively, assert claims against this estate are deemed allowed in any amount, the Trustee seeks equitable subordination of such claim(s) pursuant to 11 U.S.C. §510(c).

68.     These Defendants have engaged in or are otherwise connected to significant inequitable conduct as detailed in this Complaint, including that their purported "claims" are merely alleged deficiencies in capital accounts, as these claims arise from the purported "loans" that the Trustee hereby seeks, among other things, to be re-characterized as equity rather than debt.

69.     Equitable subordination of the Claims is consistent with the provisions and purposes of the Bankruptcy Code because it is not fair or equitable for Defendants to be paid anything through this estate when their own or associated wrongful conduct caused the demise of the Debtor in the first place, resulting in damages, including millions of dollars in claims asserted in this case, including the Ice Bear's Claim.

2381302

1    70.    By reason of the foregoing, the Claims, if allowed at all, should be subordinated for

2    purposes of distribution, pursuant to Section 510(c)(1) of the Bankruptcy Code, to general non-

3    priority unsecured claims.

4    **FIFTH CLAIM FOR RELIEF**

5    **Claim Disallowance**

6    **(Against Collins, Zezza, Heatley, Carroll, Draper, Minakami and Voyager)**

7    **[11 U.S.C. § 502]**

8    71.    Plaintiff realleges the allegations contained in each preceding paragraph of the

9    Complaint as though set forth fully herein.

10    72.    As of the filing of this Complaint, Collins, Zezza, Heatley, Carroll, Draper,

11    Minakami, LLC, and Voyager have filed claims against the Debtor's estate, previously defined as the

12    Claims.  Pursuant to Section 502 of the Bankruptcy Code, the Trustee objects to such Claims and

13    such Claims must be disallowed until such time as Defendants make the estate whole for the

14    damages they caused to the estate, plus interest thereon and costs.

15    73.    To the extent any other Defendant later files a claim against the Debtor's estate, the

16    Trustee reserves objection rights under Section 502 of the Bankruptcy Code.  Specifically, pursuant

17    to 11 U.S.C. § 502(d), any and all Claims of all Defendants against the Debtor's estate must be

18    disallowed until such time as such defendant(s) pays to the Trustee an amount equal to make the

19    estate whole for the damages they caused to the estate, plus interest thereon and costs.

20    **SIXTH CLAIM FOR RELIEF**

21    **Lien Avoidance under 11 U.S.C. § 506(d)**

22    **(Against Zezza, Heatley, Draper, Voyager and Minakami)**

23    74.    Plaintiff realleges the allegations contained in each preceding paragraph of the

24    Complaint as though set forth fully herein.

25    75.    Pursuant to 11 U.S.C. § 506(d), "to the extent that a lien secures a claim against the

26    debtor that is not an allowed secured claim, such lien is void."

27

28

14
COMPLAINT

76.     To the extent the claims filed by Heatley, Zezza, Draper, Voyager and Minakami, LLC are "not allowed secured claim[s]," any lien securing such claim is void, and Plaintiffs requests entry of a judgment accordingly.

## SEVENTH CLAIM FOR RELIEF

### Avoidance of Preferential Transfers

### (Against Heatley, Draper, Zezza, Minakami, Voyager, Kelly, and Carroll)

### [11 U.S.C. § 547]

77.     Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

78.     On December 16, 2019, one day before the Debtor filed for bankruptcy, the Insider UCC -1's were recorded against the Debtor with the California Secretary of State:

79.     On information and belief, each of the Insider UCC-1s was recorded for or on account of antecedent debts owed by the Debtor to each of the alleged secured parties before each of the respective UCC-1s was recorded.

80.     Recordation of each of the Insider UCC-1s was a transfer of interests of the Debtor in property.

81.     Recordation of each of the Insider UCC-1s occurred within 90 days of the Debtor's bankruptcy filing (and in fact, one day prior to its filing).

82.     On information and belief, each of the Insider UCC-1s was recorded while the Debtor was insolvent. Debtor is entitled to a presumption of insolvency for any transfers made during the 90-day prepetition period pursuant to 11 U.S.C. § 547(f).

83.     On information and belief, as a result of each of the Insider UCC-1s being recorded, the respective alleged secured parties (Heatley, Draper, Zezza, Minakami, and Voyager) was enabled to receive more than they would have received if (i) the case were a case under chapter 7 of title 11 of the United States Code; (ii) each of the Insider UCC-1s had not been recorded; and (iii) the alleged secured parties received payments of their debts under the provisions of the Bankruptcy Code.

2381302

84.     In accordance with the foregoing, each of the Insider UCC-1s is avoidable pursuant to 11 U.S.C. § 547(b).

85.     Furthermore, the Debtor's schedules reflect the Insider Transfers to Defendants within the one-year period preceding the Debtor's bankruptcy filing.

86.     On information and belief, Draper, Kelly, Carroll, and Zezza qualify as "insiders" of the Debtor as that term is used in Bankruptcy Code section 101.

87.     On information and belief, each of the Insider Transfers reflected in paragraph 37, supra, were made by the Debtor on account of an antecedent debt.

88.     On information and belief, each of the Insider Transfers was made while the Debtor was insolvent.

89.     On information and belief, as a result of each of the Insider Transfers being made, the respective recipient (Draper, Kelly, Carroll, and Zezza) was enabled to receive more than they would have received if (i) the case were a case under chapter 7 of title 11 of the United States Code; (ii) each of the Insider Transfers had not been made; and (iii) the alleged secured parties received payments of their debts under the provisions of the Bankruptcy Code.

90.     In accordance with the foregoing, each of the Insider Transfers is avoidable pursuant to 11 U.S.C. § 547(b).

**EIGHTH CLAIM FOR RELIEF**

**Preservation of Avoided Transfers Pursuant to 11 U.S.C. § 551**

**(Against All Defendants)**

91.     Plaintiff realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

92.     To the extent that the Insider UCC-1s and Insider Transfers are avoided pursuant to 11 U.S.C. § 547, Plaintiff is entitled to have each of the Insider UCC-1s and Insider Transfers preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment in his favor and against Defendants as follows:

1.     On the First Claim for Relief, for (a) compensatory damages according to proof at

2381302

1  trial; and (b) pre- and post-judgment interest, according to proof;

2      2.      On the Second Claim for relief, for (a) compensatory damages according to proof at

3  trial; and (b) pre- and post-judgment interest, according to proof;

4      3.      On the Third Claim for Relief, declaratory relief in the form of a judgment

5  recharacterizing Defendants' loans as equity as described herein;

6      4.      On the Fourth Claim for Relief, for equitable subordination of the claims submitted

7  by Defendants to all general unsecured nonpriority claims allowed in the Debtor's case;

8      5.      On the Fifth Claim for Relief, disallowance of any and all claims as described herein;

9      6.      On the Sixth Claim for Relief, voiding liens under 11 U.S.C. § 506(d) as described

10  herein;

11     7.      On the Seventh Claim for Relief, avoidance and recovery of the Insider UCC-1s and

12  Insider Transfers as preferential transfers under 11 U.S.C. § 547;

13     8.      On the Eighth Claim for Relief, preservation of the avoided transfers for the benefit

14  of the estate pursuant to 11 U.S.C. § 551;

15     9.      On all Claims for Relief,

16          a.   For attorney fees as allowed by law;

17          b.   For costs of suit according to proof; and

18          c.   For such other and further relief as the Court deems just and appropriate under the

19              circumstances.

20  DATED:   October 7, 2020                    BRUTZKUS GUBNER

21
                                              /s/ Jason B. Komorsky
22                                          By:_____
                                              Steven T. Gubner
23                                          Jason B. Komorsky
                                              Jessica L. Bagdanov
24                                          Special Litigation Counsel for Thomas H. Casey,
                                              Chapter 7 Trustee
25

26

27

28

                                        17
                                    COMPLAINT

2381302

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>JASON B. KOMORSKY - Bar No. 155677<br>JESSICA L. BAGDANOV - Bar No. 281020<br>BRUTZKUS GUBNER<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA 91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email: sgubner@bg.law<br>      jkomorsky@bg.law<br>      jbagdanov@bg.law<br>*Special Lit. Counsel for Thomas H. Casey, Ch. 7 Trustee* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>ICE ENERGY HOLDINGS, INC.,<br><br><br><br>Debtor(s). | CASE NO.: 8:19-bk-14865-MW<br><br>CHAPTER: 7<br><br><br>ADVERSARY NUMBER: |
|---|---|
| THOMAS H. CASEY, Chapter 7 Trustee,<br><br><br><br>Plaintiff(s)<br><br>Versus<br><br>DAVID ZEZZA, an individual; MARCEL CHRISTIANS, an individual; ALEX COLLINS, an individual; JOSEPH DRAPER, an individual; DAVID HEATLEY, an individual; DANIEL LEFF, an individual; FRANCIS CARROLL, an individual; MARCUS CHILDRESS, an individual; JAMES KELLY, an individual; MINAKAMI LLC, a Delaware limited liability company; MINAKAMI TRUST; VOYAGER OCEAN LIMITED, a foreign entity of unknown form; and DOES 1 to 100, inclusive,<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING  [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____
> **Time:** _____
> **Courtroom:** 6C_____
>
> **Place:**
> ☐ 255 East Temple Street, Los Angeles, CA 90012
> ☐ 3420 Twelfth Street, Riverside, CA 92501
> ☒ 411 West Fourth Street, Santa Ana, CA 92701
> ☐ 1415 State Street, Santa Barbara, CA 93101
> ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS. REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

                    **KATHLEEN J. CAMPBELL**
                    **CLERK OF COURT**


Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____



                    By: _____
                              Deputy Clerk

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** <u>(state method for each person or entity served)</u>:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


_____    _____
*Date*                    *Printed Name*                                                    *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    Page 3                        **F 7004-1.SUMMONS.ADV.PROC**